IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENT PURCHASE,                              )
                                            )
       Plaintiff,                       )
                                            )
vs.                                         )  Civil No. 15-cv-1075-JPG-CJP
                                            )
NANCY A. BERRYHILL,                         )
Acting Commissioner of Social Security,     )
                                            )
       Defendant.[1]                     )

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Kent Purchase seeks judicial review of the final agency decision denying his application for Medicare coverage as a disabled individual pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for Medicare coverage in October 2011 and alleged that his disability began on May 16, 2011. (Tr. 115.) ALJ Roxanne J. Kelsey denied the plaintiff's application on 3 March 2014 after holding an evidentiary hearing. (Tr. 11–18.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Plaintiff exhausted his administrative remedies and filed a timely complaint in this Court.[2] Plaintiff is pro se here, but was represented by counsel at the administrative stage.

## Issues Raised by Plaintiff

In his brief (Doc. 39), plaintiff argues that he is unable to return to his past work and cannot

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. See, *Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).
[2] Defendant's motion to dismiss on timeliness grounds was denied. See, Doc. 30.

do any job that requires "excessive movement of [his] arms, knees, legs and back." He also argues that his conditions are getting worse as he ages.

## Applicable Legal Standards

Plaintiff did not have the sufficient quarters of coverage to qualify for Disability Insurance Benefits (DIB). He would be eligible for Medicare coverage based on a period of prior government employment, however, if he met the disability requirements for DIB as of his date last insured for Medicare coverage. *See* 42 U.S.C. § 1395c.

For purposes of DIB, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not

2

> disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, the Commissioner must determine: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512–513 (7th Cir. 2009).

This Court reviews the Commissioner's decision to ensure that the Commissioner made no mistakes of law and that decision is supported by substantial evidence. This scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but only whether the ALJ's findings were supported by substantial evidence and that the ALJ made no mistakes of law. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence: "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for substantial evidence, the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of

credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). While judicial review is deferential, however, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Kelsey followed the five-step analytical framework described above. She determined that plaintiff did not have enough quarters of coverage to be eligible for DIB; that he was eligible for Medicare as a disabled person through June 30, 2013; and that he had not worked at the level of substantial gainful activity from his alleged onset date in 2011 through June 30, 2013. She found that plaintiff had severe impairments of a left knee impairment and left wrist tendonitis, which did not meet or equal a listed impairment.

The ALJ also found that plaintiff had the residual functional capacity (RFC) to perform work at the medium exertional level, with no more than frequent climbing, kneeling, or crawling. Based on the testimony of a vocational expert, the ALJ found that plaintiff could perform his past work as a janitorial service supervisor and as a carpenter.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

   **1.   Agency Forms**

Plaintiff was born in 1954 and was almost 56 years old on his alleged onset date of May 16, 2011. (Tr. 152.) Plaintiff claimed that he could not work because of arthritic knees, a left hand

4

injury, and "back trauma." (Tr. 156.) He had worked in facilities maintenance at a community college and at several different carpenter jobs. (Tr. 166.)

### 2. Evidentiary Hearings

Plaintiff was represented by an attorney at the evidentiary hearing in November 2013. (Tr. 25.) The ALJ noted at the outset that this was a "Medicare coverage only case." (Tr. 25.)

Plaintiff testified that he had pain in his low back and right leg and that he used over-the-counter medicated patches. He also took prescription medication, but did not know what kind. Plaintiff claimed that he could sit for 30 to 45 minutes, stand for 45 minutes, and walk for a couple of blocks. He had recently taken a bus ride to Alabama on a church trip, but he was "very uncomfortable." (Tr. 35–37.)

A vocational expert then testified that a person with plaintiff's RFC would be able to do plaintiff's past work in facilities maintenance—which he categorized as a janitorial service supervisor—and as a carpenter. (Tr. 41–42.)

### 3. Medical Treatment

In March 2011, Dr. Golz, an orthopedic surgeon, diagnosed plaintiff with left wrist tendinitis and a lateral meniscal tear in the left knee. Dr. Golz performed arthroscopic surgery on the left knee on May 16, 2011—the alleged date of disability onset. Two months after surgery, plaintiff was doing better. He was moving about independently and had good motion of the knee with no real tenderness. Dr. Golz noted that the plaintiff had worked at Shawnee College in maintenance, but that he had been laid off due to budgetary reasons.

In August, plaintiff was released to full duties. In September, however, plaintiff said that he had been trying to increase his activity level, and this resulted in stiffness and swelling. On

5

physical exam, Dr. Golz noted that plaintiff had full motion of the knee with no instability. There was mild crepitus and diffuse mild tenderness, but no swelling. Plaintiff was concerned that he could not return to work, so Dr. Golz ordered a functional capacity exam (FCE). (Tr. 307-314.)

Dr. Golz saw plaintiff again after the FCE was completed. The FCE showed plaintiff was capable of medium work with difficulty squatting, kneeling, crawling, climbing ladders, and lifting over 40 pounds. On physical exam, plaintiff had no swelling and good alignment of the leg. The range of motion of his knee was full with some crepitus and complaints of discomfort. Dr. Golz thought that the restrictions recommended by the FCE were likely permanent. He expected plaintiff to have some degenerative complaints about his knees, but he did not think these complaints were disabling. In February 2012, Dr. Golz noted plaintiff had a satisfactory range of motion that was pain-free in both knees. (Tr. 315-317.)

In June 2012, plaintiff went to the emergency room complaining of pain in the lumbar area. He received 20 Naproxen pills, with no refills. (Tr. 339–340.) In July 2012, plaintiff complained to his primary care doctor that he was suffering pain in his back for the past four months. On exam, he had a normal range of motion and mild lumbar tenderness. The straight leg-raising test was negative and the impression was chronic back pain. (Tr. 371–372.) In November 2012, plaintiff said he still suffered from lower back pain and pain in his knees. (Tr. 367.)

In July 2013, plaintiff complained he had been suffering from back pain for the last 18 months, which was getting worse and radiating into his left thigh. He had a full range of motion of the lumbar spine with muscle spasm. (Tr. 345-347.) An MRI of the lumbar spine in November 2013 showed mild degenerative disc disease with diffuse disc bulge at L3-4 and L4-5. (Tr. 389.)

## Analysis

Plaintiff does not dispute the ALJ's finding that he does not have enough quarters of covered employment to qualify for DIB benefits. What is at stake here instead is his eligibility for Medicare coverage as a disabled person. Plaintiff is entitled to that coverage only if he met the disability requirements for DIB as of the date last insured for Medicare coverage. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). It is not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date. *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).

Plaintiff's date of last insured is June 30, 2013. Plaintiff's arguments are not focused on his condition as of June 30, 2013. Rather, he makes the opposite argument that his condition has gotten much worse since that date, focusing on his back and knee pain.

First, plaintiff argues that his back has gotten much worse since he was diagnosed with a bulging disc. He says he has received injections in his back several times. Plaintiff was not diagnosed with a bulging disc, however, until the MRI was done in November 2013—after his date of last insured. The injections in his back occurred after that, well after the date last insured. The medical evidence in the record regarding his back does not demonstrate that his back pain was severe enough to be disabling as of June 30, 2013.

Plaintiff also argues that his knee has gotten much worse and that he now needs a knee replacement. While plaintiff's knee condition may have deteriorated after the relevant time period, the medical records before the ALJ do not suggest that his knee was anywhere that bad before June 30, 2013. As the ALJ noted, by February 2012, Dr. Golz reported that he was doing

7

well and had a satisfactory range of motion that was pain-free in both knees. Dr. Golz's records certainly do not suggest that plaintiff needed a knee replacement as of June 30, 2013.

The Court sympathizes with Mr. Purchase's situation. It is certainly unfortunate that his condition had deteriorated since his date last insured. However, this Court cannot find in his favor unless the ALJ was wrong in denying his application. Plaintiff is only entitled to Medicare coverage if he met the disability requirements for DIB as of June 30, 2013. That he might meet the requirements today is not the question. Plaintiff has not demonstrated, or even argued, that the evidence before the ALJ showed that he met those requirements as of June 30, 2013.

The Court has carefully reviewed the evidence and the ALJ's decision, and concludes that the decision was supported by substantial evidence and that the ALJ made no errors of law. The ALJ's decision must be affirmed.

## Conclusion

The final decision of the Commissioner of Social Security denying Kent Purchase's application for Medicare coverage as a disabled person is **AFFIRMED.** The Clerk of Court is **DIRECTED** to enter judgment in favor of defendant.[3]

**IT IS SO ORDERED.**
**DATE: September 20, 2017**

                                          *s/ J. Phil Gilbert*
                                          **J. PHIL GILBERT**
                                          **UNITED STATES DISTRICT JUDGE**

---

[3] If plaintiff wishes to appeal from the judgment, he may file a notice of appeal with this court within 60 days of the entry of judgment. Federal Rule of Appellate Procedure 4(a)(1)(B). Plaintiff is further advised that, if he intends to file a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), that motion must be filed no later than 28 days after the entry of the judgment, and the 28 day deadline cannot be extended. A proper and timely Rule 59(e) motion may toll the 60-day appeal deadline. Other motions, including a Rule 60 motion for relief from a final judgment, order, or proceeding, do not toll the deadline for an appeal.